THE STATE v. LLOYD ERVIN, Appellant.—130 S. W. (2d) 580.

Division Two, July 7, 1939.

*George Munger, Joe Farris* and *M. G. Gresham* for appellant.

*Roy McKittrick*, Attorney General, and *Wm. Orr Sawyers*, Assistant Attorney General, for respondent.

LEEDY, J.—Appellant, Lloyd Ervin, and four others, were jointly charged by information with the crime of murder in the first degree, in having killed one Fred Fulkerson, at the County of Stoddard, on or about the 26th day of July, 1936. A severance was ordered, and appellant was tried separately in the Circuit Court of Dunklin County, to which the cause was awarded on change of venue. He was convicted of manslaughter, and sentenced to a term of eight years in the penitentiary, and he appeals.

Our attention has not been called to a case in which there were more deficiencies, imperfections and irregularities in the matter of perfecting and submitting an appeal than in the case at bar. These need not be detailed, but in view of the disposition being made of the case, and the reason therefor, it is said merely in passing. At the time of the oral argument, no certified copy of the bill of exceptions had been filed, and for that reason respondent's brief was limited to the record proper. However, by agreement of counsel, appellant was permitted to file on that day what purported to be a copy of the bill of exceptions, and respondent was granted additional time in which to brief the case on the merits. The principal points relied on in oral argument were: (1) That error was committed in overruling appellant's application for a continuance; (2) in the giving of Instructions No. 16 and No. 17 on the part of the State.

Appellant assails said instructions "because they are so lined and interlined and marginal written as to be nondecipherable and unintelligible by the average juryman, and they do not properly declare the law of self-defense, if they could be read." That the point may be more readily understood, we reproduce and set forth below photostatic copies of the instructions complained of, as follows:

INSTRUCTION No. 16

State of Missouri, Plaintiff,
vs.
Lloyd Ervin, Defendant

Case No. _____

Inst no. 16

The court instructs the jury that if you find and believe from the evidence ~~beyond~~ ~~a reasonable doubt~~ that the ~~defendant~~ Lonnie Mayberry, Lloyd Ervin, at the county of Stoddard in the state of Missouri, on or about the 24th day of July, 1936, intentionally with his arms, hands, fists, legs, feet or body or by any other means, if any, did strike, kick, hit, seize or beat the said Fred Fulkerson without malice and without premeditation as these terms are explained in these instructions and not in the necessary defence of his person as explained in these instruction and while the ~~depen~~ said Lonnie Mayberry was in a violent passion suddenly aroused by reason of the deceased having struck ~~or attempted to~~ struck the said Lonnie Mayberry, and that the defendant intentionally without ~~malice~~ and without premeditation ~~for the purpose~~ of assisting the said Lonnie Mayberry engaged in the fight, if there was a fight, between the said Lonnie Mayberry and Fred Fulkerson, you will find the defendant guilty of manslaughter and assess his punishment at imprisonment in the state penitentiary for a term of not less than two years nor more than ten years, or by imprisonment in the county jail not less than six months nor more than one year, or by a

*fine of not less than five-hundred dollars, or by both a fine of not less than one-hundred dollars, and in imprisonment in the county jail not less than three months, and not more than one year; if you do not find the facts to be as set out above you will acquit the defendant of manslaughter.*

*[signature]*

The sole point mentioned by the Attorney General's brief on the merits is that with respect to the matter of giving said instructions in the form in which they were given. Of them, his brief says:

"Since briefing this case on the record proper, appellant had filed in this court photostatic copy of instructions numbers 16 and 17 given in this trial. Respondent has been unable to transpose these instructions because of the jumbled form of words and phrases therein used, and hence we are suggesting that the court consider the photostatic copy of the instructions filed as a part of the record in this case, and excuse us for our inability to abstract same in this printed brief.

"Instructions 16 and 17 which the court gave on the issue of manslaughter are so awkwardly drawn without punctuation marks by pen and ink in illegible free hand that they display a jumble of words and phrases. These instructions, by the photostatic copies filed on appeal, show words and phrases partially deleted by ink scratches and other words and phrases interlined horizontally and other words and phrases tacked on to the instruction by writing and scratching up and down the margin on both sides of the written instructions and also written upside down across the top of the written instructions. Such an awkward method of giving instructions to a jury in a murder case should not be sanctioned where the jury in the exercise of ordinary intelligence, unless by guessing at meaning of illegible words and jumbled phrases, could not possibly sort out the words, phrases and deletions into a short clear statement of the law.

"We have tried to transpose these instructions into a clear statement of the law of manslaughter as therein attempted and each time our finished product is an entirely different and incoherent state-

## INSTRUCTION No. 17

State of Missouri, - - - - - Plaintiff,

vs.

*Lloyd Ervin*

. . . . . .. .. ........ . .... , Defendant.

Case No. .. .. .. ...... .

Instruction No...... *17.*

*or the person of another*

The right to defend one's self from danger, not of his own seeking, is a right which the law not only concedes but guarantees to all men. The defendant may, therefore, *have* *assaulted and killed, or assisted one Lonnie Mayberry so,* and still be innocent, of any offense against the law. If at the time *of the said assault and killing of Fred Fulkerson, if any, if the said Lonnie Mayberry did assault and kill said Fred Fulkerson and if the defendant did aid and assist him in so doing, the said Lonnie Mayberry & defendant* he had reasonable cause to apprehend on the part of *Fred Fulkerson* *Lonnie Mayberry* a design to do him some great personal injury, and there was reasonable cause for him to apprehend immediate danger of such apprehended design being accomplished, and to avert such apprehended design *he engaged in the* *assault upon and killing of Fred Fulkerson, if any,* and at the time he did so, if he did, he had reasonable cause to believe, and did believe it necessary for him to *do so* *Lonnie Mayberry* in the way he did, if he did, to protect *himself Lonnie Mayberry* from such apprehended danger, then, and in that case, *the assault and killing of Fred Fulkerson* *aid of the defendant and the Mayberrys did the* was not felonious, but was justifiable, and you ought to acquit him upon the ground of necessary self-defense. It is not necessary to this defense that the danger should have been actual or real or that danger should have been impending and immediately about to fall. All that is necessary is that defendant had reasonable cause to believe and did believe thes facts. But before you acquit on the ground of self-defense, *of necessary defense of another* you ought to believe that defendant's cause of apprehension was reasonable. Whether the facts constituting such reasonable cause have been established by the evidence, you are to determine, and unless the facts constituting such reasonable cause have been established by the evidence in the cause, you can not acquit in such case, on the ground of self-defense.

ment of the law of manslaughter. We admit these two instructions, by reason of their awkwardness in form and their jumble of substance, are confusing to us.

"We submit that the jury was as confused as we are when they attempted to follow the tenor of instructions 16 and 17 in returning the manslaughter verdict which they did return. We do not believe that the most attentive juror could understand instructions 16 and 17 in their confused form.

"We suggest that the cause be reversed and remanded for new trial."

The instructions speak for themselves, and we think the attack on them must be sustained. We feel that, in form alone, they do not constitute a proper guide by which the jury might find the facts and issues in controversy. To us they are not only confusing, but wholly unintelligible. It will not do to submit instructions in the nature of jig-saw puzzles. The judgment is reversed and the cause remanded. All concur.